UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:22-CV-00106-EBA

JOSHUA OWENS, *et al.*,                                                                                      PLAINTIFFS,

v.                    **MEMORANDUM OPINION AND ORDER**

WILLIAM B. WOLFE, *et al.*,                                                                                  DEFENDANTS.

*** *** *** *** ***

This matter is before the Court on Defendants William B. Wolfe and Greenup County Off Road Park's Second Motion for Summary Judgment. [R. 35]. Plaintiffs Joshua Owens and Michelle Owens responded in opposition. [R. 36]. Defendants filed a reply. [R. 37].

**Facts and Procedural History**

On December 7, 2022, Plaintiffs filed a complaint against Defendants for damages stemming from injuries that Joshua Owens allegedly sustained when Wolfe's dog collided with Owens on a dirt bike track which caused Owens to be thrown from his bike. [R. 1 at pg. 3]. Plaintiffs claim that William B. Wolfe is strictly liable for Owens' injuries under Kentucky Revised Statute 258.235(4) as the owner of the dog, and Greenup County Off Road Park and William B. Wolfe, as owner of the Park, acted negligently by breaching their duty of care. [R. 1 at pgs. 3–4]. Plaintiffs also allege that, as a result of Joshua Owens' injuries, Michelle Owens suffers loss of consortium to the detriment of her martial relationship with Joshua Owens. [R. 1 at pg. 5].

Defendants filed their first Motion for Summary Judgment on September 20, 2023. [R. 19]. In their first Motion for Summary Judgment, Defendants produced for the first time a Release and Waiver document that they asserted contained Joshua Owens' signature releasing the Defendants from all liability. [R. 19 at pgs. 5, 8]. Plaintiffs refuted the authenticity of the waiver and requested

that the Court order Defendants to participate in discovery. [R. 20; R. 21]. The Court denied Defendants' Motion for Summary Judgment because there was a question of material fact as to whether Joshua Owens had signed the waiver at issue. [R. 26]. Additionally, because Defendant's had not meaningfully participated in discovery, the Court ordered Defendants to respond to Plaintiffs' discovery requests and reset the discovery deadline for April 1, 2024. [*Id.*; R. 32].

## Legal Standard

A party may move for summary judgment only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir. 1990). At summary judgment, the moving party has the initial burden to demonstrate the absence of genuine dispute as to any material fact. *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009). A disputed issue is "genuine" only if a sufficient evidentiary basis exists on which a reasonable jury could find for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmovant must provide evidence beyond the pleadings and provide probative evidence to support its claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## Analysis

Defendants argue that they should be granted summary judgment because Joshua Owens voluntarily signed a Release and Waiver document which released both Greenup County Off Road

Park and William B. Wolfe from any liability. [R. 35 at pgs. 4–11]. Defendants additionally argue that Plaintiffs' strict liability claim under KRS 258.235(4), otherwise known as the "dog bite statute," is not applicable to provide relief for Joshua Owens' injuries. [*Id.* at pgs. 11–13]. In the alternative, irrespective of the applicability of the Release, Defendants argue that Plaintiffs' claims for negligence fail for lack of required proof. [*Id.* at pgs. 14–15]. Plaintiffs argue that the Release does not apply here because the danger of a dog roaming down the middle of a racetrack is not inherent within the activity of racing and the Release cannot apply to Wolfe in his capacity as dog owner. [R. 36 at pg. 1].

### A. Strict Liability under KRS 258.235(4)

Plaintiffs assert that Defendant, William B. Wolfe, in his capacity as dog owner, is liable for the Plaintiffs' alleged damages pursuant to Kentucky Revised Statute 258.235(4). [R. 1 at pg. 4]. KRS 258.235 is referred to as Kentucky's "dog bite" statute. *Benningfield ex rel Benningfield v. Zinsmeister,* 367 S.W.3d 561 (Ky. 2012). KRS 258.235(4) states, "[a]ny owner whose dog is found to have caused damage to a person, livestock, or other property shall be responsible for that damage." KRS 258.235(4) "creates a form of strict liability for the owner of a dog." *Maupin v. Tankersley,* 540 S.W.3d 357, 360 (Ky. 2018) (citing *Benningfield,* 367 S.W.3d at 563). Plaintiffs argue that 258.235(4) applies to this action because the statute uses the word "damage," and Wolfe's dog was the cause of Joshua Owens' injuries. [R. 36 at pg. 6]. However, as Defendants assert, Kentucky case law surrounding the interpretation of KRS 258.235 shows that the statute was meant to apply to dog bites and attacks, and not other injuries involving dogs.

The Kentucky Court of Appeals recently discussed the application of KRS 258.235(4) to an action for injuries involving a dog which are neither a bite or an attack. *See Insko v. Perraut,* 2024 WL 1472056 (Ky. Ct. App. April 5, 2024). In *Insko*, Insko brought suit under KRS

Page 3 of 11

258.235(4) against Perraut claiming Perraut was liable for her injuries after she tripped over Perraut's dog seated immediately behind Insko. *Id.* at *1. There, the Kentucky Court of Appeals stated that, based on the reading of the statute as a whole and the perceived legislative intent, KRS 258.235(4) requires "some kind of act by a dog for the strict liability to apply." *Id.* at *4. Where, in *Insko*, the dog was "lying on the ground and did not act upon [Insko]," did not "bite, attack, jump on, or even nudge [Insko]," and "was simply peacefully existing," KRS 258.235(4) did not apply. *Id.* The court continued, stating, "[a]llowing KRS 258.235(4) to apply to all actions in which an injury is somehow tangentially related to a dog would bring about an absurd and unreasonable result." *Id.* at *3.

In reaching its determination in *Insko*, the Kentucky Court of Appeals relied on *Spalding v. Own Your Home, LLC.* 2019 WL 4733072 (Ky. Ct. App. Sep. 27, 2019). There, Spalding brought suit against the homeowner after he sustained injuries when he slipped on dog excrement. *Id.* The Court of Appeals stated that "the overall tenor of KRS 258.235 provides that it was intended to encompass *only damage stemming from dog bites or attacks*. Indeed, the statute is frequently referred to as the 'dog bite' statute. This interpretation is consistent with other subsections of the statute that explicitly address vicious, attacking dogs." *Id.*, at *2 (emphasis added). The *Spalding* court relied on the Kentucky Supreme Court's interpretation of the legislative intent of KRS 258.235, as discussed in *Benningfield*. *Id.* In *Benningfield*, the Kentucky Supreme Court stated that KRS 258.235 was part of a "legislative scheme to displace or abrogate the common law rule on dog-bite liability…presumably to create incentives for various actors to take steps to reduce the chances of *dog bites*. And, more recently, our Supreme Court referred to KRS 258.235(4) as governing 'dog bite law' and being the 'progeny of years of evolution in the law of dog attacks.'" *Insko*, at *2 (citing *Benningfield,* at 562; *Maupin v. Tankersley*, 540 S.W.3d

357, 359-60 (Ky. 2018).

Here, Joshua Owens' injuries derive from colliding with Wolfe's dog while riding a dirt bike on the track at Greenup County Off Road Park. The accident involving the dog was neither a bite nor an attack. While one could argue that the dog's presence on the dirt bike track was "some kind of act by a dog," as referred to in *Insko*, the Kentucky Court of Appeals very clearly stated in *Spalding* that KRS 258.235 was intended to encompass only damage stemming from dog bites or attacks. *Spalding,* at *2. Therefore, based on Kentucky law, William B. Wolfe cannot be held liable under KRS 258.235(4) because the injury involving his dog did not involve an attack or a bite.

B.  Applicability of the Waiver

Plaintiffs also assert a negligence claim against William B. Wolfe, as owner of Greenup County Off Road Park, and Greenup County Off Road Park. [R. 1]. Defendants assert that Joshua Owens released Defendants from all liability for his injuries when he signed the "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" prior to entering the track at Greenup County Off Road Park. [R. 35]. While Plaintiffs previously disputed the authenticity of Joshua Owens' signature on the Release document, upon questioning at his March 26, 2024, deposition, Owens identified his signature as the one appearing on the Release and acknowledged that he would have had to sign a waiver in order to enter the track. [R. 35-4 at pg. 6]. The "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" at issue here, states, in relevant part:

> "IN CONSIDERATION of…being permitted to enter for any purpose any RESTRICTED AREA (defined as any area requiring special authorization, credentials, or permissions to enter or any area to which admission by the general public is restricted or prohibited), I, for myself, my personal representatives, heirs and next of kin:
>
> 2. HEREBY RELEASE, WAIVE, DISCHARGE AND COVENANT NOT TO SUE…track operators, track owners, officials…owners and lessees of

premises…and each of them, their directors, officers, agents and employees, all for the purposes herein referred to as "Releasees," FROM ALL LIABILITY TO THE UNDERSIGNED, his/her personal representatives, assigns, heirs, next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFORE ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASES OR OTHERWISE.

3. HEREBY AGREE TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and their insurance carrier, and each of them FROM ANY LOSS, LIABILTY, DAMAGE, OR COST they may incur arising out of or related to the EVENT(S) WHETHER CAUSED BY THE NEGLIGENCE OF…

4. HEREBY ASSUME FULL RESPONSIBILTY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(s) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

6. IF, DESPITE THIS RELEASE, I OR ANYONE ON MY BEHALF MAKES A CLAIM AGAINST ANY OF THE RELEASEES NAMED ABOVE, I AGREE TO INDEMNIFY AND SAVE AND HOLD HARMLESS THE RELEASEES AND THEIR INSURANCE CARRIER, AND EACH OF THEM FROM ANY LITIGATION EXPENSES, ATTORNEYS' FEES, LOSS, LIABILITY, DAMAGE, OR COST THEY MAY INCUR DUE TO THE CLAIM MADE AGAINST ANY OF THE RELEASEES NAMED ABOVE, WHETHER THE CLAIM IS BASED ON THE NEGLIENCE OF THE RELEASEE OR OTHERWISE.

7. HEREBY agree that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS, and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the EVENT(S) is/are conducted and that if any portion hereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect.

I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTAIL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTENDED MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILTY TO THE GREATEST EXTENT ALLOWED BY LAW.

"An exculpatory contract for exemption from future liability for negligence, whether ordinary or gross, is not invalid per se…[h]owever, such contracts are disfavored and are strictly construed against the parties relying upon them." *Hargis v. Baize,* 168 S.W.3d 36, 47 (Ky. 2005). The terms of the exculpatory clause must be "so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." *Id.* In *Hargis,* the Kentucky Supreme Court stated that a preinjury release will be upheld only if: "(1) it explicitly expresses an intention to exonerate by using the word "negligence;" (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; (3) protection against negligence is the only reasonable construction of the contract language; *or* (4) the hazard experienced was clearly within the contemplation of the provision." *Id.* (citing 57A Am. Jur. 2d, *Negligence* § 52 (2004). "[A]n exculpatory clause must clearly set out the negligence for which liability is to be avoided." *Id. "*As evidenced by the *Hargis* Court's use of the word 'or' between the four alternatives, if a waiver satisfies just one of the foregoing criteria, it is legally valid." *Thomas v. Allen,* 650 S.W.3d 303, 308 (Ky. Ct. App. 2022).

Defendants argue that the Release explicitly expresses intention to exonerate Defendants from negligence claims by using the word "negligence." Paragraph Two of the Release defines the "Releasees," which includes, in relevant part, "track operators, track owners, officials…owners and lessees of premises used to conduct the EVENT(S)…" This definition includes both Greenup County Off Road Park, track operator, and William B. Wolfe, in his capacity as the track owner. [R. 37 at pg. 3]. Paragraph Two also states, in relevant part, that the signer releases, waives, discharges and covenants not to sue "the Releasees FROM ALL LIABILITY TO THE UNDERSIGNED… ANY CLAIM OR DEMANDS THEREFORE ON ACCOUNT OF INJURY

TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE."

In *CLK Multifamily Management LLC, v. Greenscapes Lawn & Landscaping, Inc.,* the clause at issue stated, "[defendant] shall only be liable for the gross negligence, bad faith & willful misconduct of [defendant], its agents, or employees. [Defendant] will not be liable for any slip and fall accidents caused by snow, ice, or wet conditions." 563 S.W.3d 706, 712 (Ky. Ct. App. 2018). The Kentucky Court of Appeals held that the clause expressly exonerated the defendant for all liability except gross negligence, bad faith, and willful misconduct, based on the plain language of the contract, pursuant to the first *Hargis* alternative. [*Id.*]. Similarly, in *Rieff,* the Kentucky Court of Appeals held that the provision met *Hargis* alternative one expressly exonerating JJ Stables from all liability, except for instances of gross negligence, where the clause at issue stated, "I/WE understand and agree that except in events of THIS STABLE'S gross negligence, I/WE accept full responsibility for bodily injury sustained…on or in relationship to the premises…and that I/WE hereby…release and discharge the owners, operators, sponsors of the premises and their respective servants, agents, officers and all other participants of and from all claims." *Rieff v. Jesse James Riding Stables, Inc.,* 656 S.W.3d 225, 229 (Ky. Ct. App. 2022).

Similarly, here, the Release at issue plainly states that the "Releasees" are exonerated for an injury caused by the *negligence* of the Releasees. Because the Release plainly includes Defendants' "negligence" as an injury for which the Defendants shall not be liable, Greenup County Off Road Park and William B. Wolfe, in his capacity as track owner, are released from liability for any negligence claims. The Court need not address any remaining *Hargis* alternatives because only one is required. *See Thomas v. Allen,* 650 S.W.3d 303, 308 (Ky. Ct. App. 2022) ("As

evidenced by the *Hargis* Court's use of the word 'or' between the four alternatives, if a waiver satisfies just one of the foregoing criteria, it is legally valid.").

In opposition, Plaintiffs assert that Kentucky requires the exculpatory clause to clearly identify the potential dangers a signatory waives, and because the Release did not, the Release does apply to any of Plaintiffs' claims. [R. 36 at pg. 4]. In support, Plaintiffs cite *Cahill v. Earlywine Racing, Inc.,* in which the Kentucky Court of Appeals stated, "hay bales, which are traditionally used to outline such race tracts were included within that waiver's potential dangers because they were within the scope of possible dangers accompanying racing." 2008 WL 4683003, at *3 (Ky. Ct. App. Oct. 24, 2008). However, as Defendants point out, the court in *Cahill* declined to extend any requirement that potential dangers must be identified in order to satisfy the *Hargis* factors. *See Id.* ("We agree that the requirement of clear identification of potential dangers *may* be a requirement to uphold a standard release from…This practice, combined with the holding of *Donegan*, precludes us from extending *Hargis* to require specific identification of dangers in a release agreement pertaining to racing.") (emphasis added) (citing *Donegan v. Beech Bend Raceway Park, Inc.,* 894 F.2d 205, 208 (6th Cir. 1990) (holding that, under Kentucky law, an agreement releasing a track owner from liability only bars claims for ordinary and gross negligence, and not for wanton or willful negligence."). Accordingly, because the Release satisfied at least one *Hargis* factor, Defendants will not be liable for Joshua Owens' injuries pursuant to his negligence claim.

### C.  Loss of Consortium

Lastly, Plaintiff Michelle Owens asserts that as a direct and proximate result of the Defendants' negligence, she was caused to suffer loss of consortium, lost services, assistance, aid, society, companionship, and conjugal relationship, all to the detriment of her marital relationship

with Joshua Owens. [R. 1 at pg. 5]. "Under Kentucky law, loss of consortium is a separate cause of action but is derivative of the underlying claim." *Terry v. Ethicon, Inc.,* 2022 WL 468051, *4 (W.D. Ky. Feb. 15, 2022) (citing *Burgett v. Troy-Bilt,* 970 F.Supp. 2d 676, 685 (E.D. Ky. 2013) (applying Kentucky law). "While loss of consortium is an independent cause of action that seeks to compensate a spouse's legal injury, it is derivative of the claims of the individual who suffered actual physical injury." *Halcomb v. Britthaven, Inc.,* 2015 WL 998560, at *11 (E.D. Ky. Mar. 5, 2015). Here, because the Court has granted summary judgment in favor of the Defendants and held that Defendants are not liable for Joshua Owens' underlying claim, no foundation remains for Michelle Owens' loss of consortium claim. *See Burgett,* 970 F. Supp.2d at 685; *see also Boggs v. 3M Co.,* 2012 WL 3644967, at *12 (E.D. Ky. Aug. 24, 2012).

D.  Conclusion

William B. Wolfe is not strictly liable as dog owner for Joshua Owens' injury under KRS 258.235(4) because the injury did not occur as a result of a dog attack or bite. Defendants are not liable for Joshua Owens' injuries because the Release waiver, admittedly signed by Joshua Owens, explicitly expresses intention to exonerate Defendants from negligence claims by using the word "negligence." Because Defendants are not liable for Joshua Owens' injuries, Michelle Owens' loss of consortium claim must be dismissed. Accordingly,

IT IS ORDERED that:

1. Defendants William B. Wolfe and Greenup County Off Road Park's Renewed Motion for Summary Judgment, [R. 35], is GRANTED.

2. An appropriate judgment will be entered contemporaneously herewith.

Signed June 26, 2024.

